Case 15-1783 and 15-1929, The Ohio Edison Company et al v. NLRB Oral argument not to exceed 15 minutes for the petitioners and 15 minutes will be shared by the NLRB and the DOJ So we'll start with Mr. Nikolak for the petitioner's cross-respondence. May it please the court, good morning, Your Honors. My name is Nick Nikolak and I represent First Energy Generation Corp. and today is 8th Wednesday of the General Conference of First Energy. Essentially, this case has grown a little bit in issues since we came to the court. Preliminarily, we see that the court has to address the timeliness issue of the NLRB's brief. It's cross-application for appeal that it filed. It took two extensions and then filed its brief one day untimely. So we filed a motion to straighten that brief and the clerk of court allowed them to file the brief but said that this panel would have to decide whether or not the filing of the brief was timely. The main issue here for us on merits is two-part. One is whether the union made a request of argument that was reasonably understood by the court. And the second issue is whether these tangible gifts, these mementos, these tokens of appreciation, whether these gifts are gifts as defined by the act and not mandatory subjects of bargaining or whether they're wages of mandatory subjects of bargaining. As a side note, we raised this court based on the D.C. Circuit Court of Appeals and now the 9th Circuit Court of Appeals this argument about Laf-Solomon. We present that argument before the court as to whether this court can address that argument under the Doctrine of Extraordinary Circumstances. We did not raise the Laf-Solomon in the parking lot below. But given what the D.C. Circuit Court of Appeals held, it didn't slam the door that another court could consider that doctrine under the Extraordinary Circumstances Doctrine. Has the D.C. Circuit considered that appeal? They almost slammed it. I mean, they said they don't think you're going to prevail. You didn't make the argument at your stage. Yes, they almost slammed the ground. We would agree with that. Maybe you should focus on the two main issues. And I'd like to do that. When it comes to a request for bargaining, we know that there's no magic words that the union has to present in order for us to understand that they're bargaining or demanding bargaining. And then we would have to sit down and bargain with them. What does the employer do when it comes to a demand for bargaining? The employer provides notice, and it provides the union an opportunity to bargain. And we did that. So we gave them notice of proposed changes in September of 2012. We not only did it once, we did it three times. The notice of proposed changes, was that the subject of the scripts that you talked about? Yes. Are those part of the record here? Yes. The script was the letter that she eventually sent to Mr. Marchman on September 27th. The script became the letter? The script became the letter. Is there evidence in the record that says that? I'm interested in knowing whether the record shows us what these folks read to the union reps. A letter isn't that unless there's something that says, yeah, that's identical to what I read. So are the scripts themselves there, or is there that sort of testimony that converts to the letter? There is testimony that talks about what the prepared scripts were. And I believe, if I'm not mistaken, I believe that script is in the record. Okay. But if it's not, Your Honor, it mirrors the contents of that September meeting. I can't just take your word for it, unfortunately. I'm sure you're telling the truth. But were there other subjects in the letter? Let's just talk about the letter. Was the letter talking about other subjects? I mean, I'm wondering, you know, was this really the only thing people were talking about, or were there other things that the union leader could have been unhappy about? There were other things, Your Honor, and that's a great point. The letter also talked about the employee service recognition program. It talked about changes to the 401K plan. It talked about changes to the retiree insurance benefit. And it talked about changes to merit adjustments. What kind of changes to the 401K? They were reducing contribution loans, I believe. Reducing contributions. What does that mean? The matching contribution portion. Reducing match. Yeah. All right. Very good. So these three changes, and that's a great question, Your Honor, because these three changes are contained in the collective bargaining agreement. So these are in our collective bargaining agreement with a clause that says we reserve the right to, you know, make changes to these things from time to time. And what the board held here in the case is that Mr. Marshman's vague comments that he made to us, plus his filing of the charge equated to a request to bargain. And the charge pertained only to this alarm clock program, or did it pertain to stuff like the 401K? Everything, Your Honor. It pertained to everything. And then the NLRB, because those were contained in the collective bargaining agreements and there was a grievance and arbitration clause, the NLRB deferred those to arbitration and won on all three of those issues. So the only thing that wasn't contained in the collective bargaining agreement was this employee service recognition policy. That's what the board won on. And bringing it back to the point of how it ties in, the ALJ and the board said, well, when Mr. Marshman said to you these vague comments, oh, no, you're doing it again, and now I have to file a board charge running, and I have to come to Akron on this one, essentially, is what he said. That coupled with the filing of the board charge should put us on notice that he demanded bargaining. And it doesn't. And the reason why it doesn't is because we believe that the union's position was we couldn't make those changes mid-contract. That's the purpose of the 885 charge. That's what we understood the 885 charge to be, not a request to bargain to us. He said, hey, these three things that you guys are challenging, that we're challenging, these three things, you can't change them mid-contract. That's an 885 charge. That's what he thought we thought he said. So what charge? What's that again? The 885 charge. The failure to request bargaining. But that's how we understood his charge. Is the law clear for the reason you're saying that a charge is not a request to bargain for purposes of the issue we have here? Yes, sir. And I can't even do a statement that we don't have to bargain. Yes. The dissent in this case, the board dissent in this case, cited 11 cases in 50 years of history that filing a charge is not a request to bargain. And they distinguish the two cases that the judge relied on. Putting the charge aside, the ALJ specifically found and stated that Marshman's statements and the ALJ says this is with regard to the employee service recognition policy. This is, oh, no, you don't. I'd have to file a board charge, and I'd have to come to ACRA that that is the request to bargain. Now, that might sound pretty weak to me, but in the context of the NLRB standard review, could a reasonable mind accept this as adequate to support it? In a union management context, why is that something that no reasonable mind could accept, that when the HR person tells them what they're going to do, it says, oh, no, you don't? I'm going to come to ACRA about that, and it sounds pretty tough to me. I might not buy it, but the ALJ bought it. Well, in the ALJ, I don't think understood these parties' positions as well as you should have. Mr. Marshman is the union president, eight years of experience negotiating contracts with First Energy. He's not a novice. Ms. McNamara, the person that called him up about the employee service recognition program and these three other changes, she's the director of labor relations. The labor relations department at First Energy has between 9 and 13 people. They're the ones that bargain with the union. These are sophisticated parties around there. These aren't novices. But was there, of course, a dealing between these two people that this might be his way of saying, and she said, okay, Marshman, I got you. I got your message. We'll bargain. Is there any evidence of that? There is, of course, a dealing between these parties because Marshman has been in place for eight years. I mean, it seems with the two top dogs for labor and management. Yes. They've obviously chatted before. These are the two top dogs. There's a whole phrase, I'm going to go to Akron on this, which seems either ambiguous or slang. It seems there's some things you go to Akron about and there's some things you don't go to Akron about. This is one he wants to go to Akron about. And, Your Honor, that's an excellent point. Let's break down his phrase. He says, oh, no, you don't again. It's a protest. We all understand that to be a protest. You know I now have to file a board charge on you. That's a threat. Filing a board charge is a threat. Now he says I have to come to Akron on this one. On this one. I mean, what is on this what? On this announced changes, these proposed changes that she's talking about. On a reward program? He doesn't specify. Although the paragraph, at least the ALJ's paragraph adverts and begins the whole thing. Going to be implementing the change to the employee service recognition policy. Now maybe that's why. Is that a reasonable reading of that general statement about something that encompasses four things, three of which are covered by the CBA, and actually sound quite important as opposed to waiting ten years for an alarm clock as the five. I mean, what's your argument on the interpretation of that statement? First off, I think, and this is the company's position the whole way through, but this employee service recognition program was an afterthought. He was really upset about the first three announcements because those are contained in the collective bargaining agreement. We can't modify those things midterm. That was the purpose of his charge, and that's what he was really upset about. This employee service recognition policy, this is tradition. This goes back to the 50s and 60s. We used to give employees gifts, globes. They're mementos. They have First Energy's name on them. They're globes. They're pen and pencil sets. They're candy dishes. They're tote bags. They're trinkets. They're things that you put in your curio. Curios. Like the car business. Yeah, exactly right. They're mementos. They're thank yous to employees. So when he says, I have to come to ACRA on this one, what does that mean to McNamara? That means to McNamara, because unions do this often, and she testified to this, they come to the CEO and they complain. The CEO is not the decision maker. The CEO has never bargained a contract, has never been in bargaining, and never will be in bargaining. They come to just wage complaints to the CEO. Hey, you're doing this. It's unfair. They're not coming to ACRA to bargain, and why are they coming to ACRA to bargain? Nobody ever bargains in ACRA. That's where the company's headquarter is. When we want to bargain, you know what happens? We go to Shippingport, Pennsylvania, where the unit is. We're going to bargain there. Is any of this incorrect? McNamara testified undisputedly that that was her interpretation of it. She was credited 100%. She testified that the CEO never bargains. He never would bargain. That's her job. That's what she's supposed to do. Was she in ACRA? She's in ACRA. She's in ACRA, and some of the labor relations department people are in ACRA. But when they go to negotiate, they're going out to where the 290 members of 272 are. 272 doesn't come to ACRA. They don't bargain in ACRA. You're not going to make these members drive an hour and a half to come to ACRA to bargain. One person's going to go out there. That's how it works. And that's why it's fundamentally, that's why it makes sense that the comment that he made to her, which was, we're unsure how he lost his case on her interpretation because this court's rule and the NMRB's rule is, is there a clear communication of meaning? I would say there wasn't based on his comment. What case from our court best states that standard? I'll get the case statement. I just want to point out the ALJ, at least, says the board has held that if an employer has a doubt about whether a request has been made, then it can be eliminated later. Go ahead. Your Honor, and that's an interesting point because that's where the law goes awry here. The ALJ is putting the burden on us to say to the union, are you sure you don't want to bargain about this? That's not the law. The law is. Even are you sure you do want to bargain about it? Exactly. Ms. McNamara didn't say, is that a request to bargain? Exactly, Your Honor. Exactly. Because the owners, look, we provide them with an opportunity to bargain and we provide them with notice. That's our obligation. The union's obligation is to come to us and say, yes, I want to bargain over that stuff. Communicate a clear meaning that they want to bargain over that with us. And we have to understand the meaning of that, the meaning of their communication. We don't have that here. We have the union basically, we have the ALJ and the board basically taking the law, flipping it on its head and putting the burden on us. Marshman had three months to request bargaining. What did he do? He filed a charge. After these three communications that we had with Marshman, we didn't hear from him for three months. He could have sent an email. He never does come to Akron. He never does come to Akron, but he could have sent an email. He could have called up McNamara and said, hey, McNamara, just to clarify, I want to bargain about this. Don't just do these changes. Send a letter back to us. He does nothing. And the board can't save the union from that burden when Marshman does nothing. And then three months later, the changes are made, and the board's trying to save this case for the union by inventing that this is a request to bargain and it's not. Use the words discuss, meet, request dates, talk about, deal, barter, haggle, bargain, prefer, negotiate, get together. Any one of those words we would have understood as a request to bargain. None of those words were in this case. Eric? I'll take it. Time is very little. I'll take it. Yes. I'm going to introduce the court, Benjamin Schultz from the Department of Justice. I'll be representing the NLD with regard to the Federal Agencies Reform Act issue, including the related waiver issue. Seven minutes, and then I'm reserving the remainder of the time for my colleague from the NLRB, Parker Sheehy, to be addressing the other issues in the case. And just at the threshold, if the court is, I'd be happy to reserve more for my colleague, but the court would like to focus on the other issues. Yeah, I'd be interested to hear kind of your opening statement. Certainly, Your Honor. And at the threshold, there's a federal statute, 29 U.S.C. Section 160E, which explains that when an issue is not raised before the board, this court can't consider it as an extraordinary circumstance. And the employer here has acknowledged that they haven't raised the Federal Agencies Reform Act issue before the board. And their only argument for extraordinary circumstances rests on a D.C. Circuit case called UC Health, which is an exception about when the composition of the agency itself is at issue. Well, the problem with that argument is that the composition of the agency isn't at issue here. That exception is an exception based on the actual agency adjudicator. So, for example, if the board itself got to form it, as in the Mill Canyon case, for example, or the Yardmasters case, which is a D.C. Circuit case, where this exception generates, then maybe perhaps you could invoke the extraordinary circumstances exception. But here, the board that decided the case had a full complement of confirmed board members, and there's no question that the board wasn't able to listen to any objection that the employer here could have raised about the Federal Agencies Reform Act. And if you just step back for a moment, that makes sense. Because what 160E is about is it's trying to figure out is there some reason why you were incapable of raising this before the board or why we should excuse it. And when the board itself lacks a quorum, if, for example, if your objection would require the board to invalidate itself, then you can understand why you wouldn't require someone to bring that challenge before the board. You would have a paradox that if the board agreed with the argument, it would conclude that it couldn't agree with the argument because they're not supposed to be in office in the first place. But that's not what you have here. You have a challenge that the complaint was invalidly issued because of the tenure of the acting general counsel, and the board was perfectly able to hear and consider that objection. And I'll point out as well that the government was prejudiced by their failure to raise it because at the time that the board decided this case, there was a fully confirmed general counsel, and that person could have ratified this complaint had that person known that the issue was there. I don't think a good statement is a positive case. If there's anything further about 160E, I'll address that. I don't know if the court wants to hear anything about the merits of the Federal Legates User Quorum Act issue itself because we very much disagree with the EC Circuit's interpretation there. Not particularly. In that case, Your Honor, we have to turn it over to my colleague from the NLRB. Thank you. I already lost one of those in the case involving Mr. Clair, so I'm trying to be very careful. Good morning, Your Honor. It's Barbara Schicke for the National Labor Relations Board. I'm going to begin by clarifying a couple of things. I've got a couple of misstatements, and I'm going to point to some of the things in the record, some important things I think that we should begin to frame in conversation. First of all, if you look at appendix 19, page 19, right under the appendix, it's very clear that the charge that was filed in October, the ALJ, so the charge, unfortunately, isn't in the appendix. We're happy to supplement. It's in the record. It's not in the appendix, I don't think. So all I have right now is the ALJ referring to the charge, expressly stating that the charge was uniquely to the Employee Service Recognition Program. At a later time, we're happy to submit, supplement the record, or the appendix, rather. And then I'd also point out, because I think this, too, is important, on page 8, which is part of the DNO, and page 18 of the appendix, which is the Administrative Law Judge decision, there is the CEO, Alexander. I think this is important because he's the one in Akron. He's the one that the union is going to go see. The CEO is the ultimate decision maker, and in fact, he was the one who decided to change this program. So it's not – I don't think it's a fair characterization of the interactions that happen in Akron to say no bargaining happens there. Perhaps two people don't sit across from the table from one another, and again, that's not in the record where exactly physically the parties are located. There's a course of dealing that these negotiations occur at the union's location. Isn't that pretty strong evidence that I'm coming to a place other than that place isn't really a request to negotiate? I don't know that that's necessarily true. It could be that it's not – he's not saying I'm going to sit down at the table across from you right now, but I think it's a really narrow view of collective bargaining to suggest that my conversations, if I say I'm going to come, if I'm going to speak with the decision maker, the CEO, the one who made the change, and that if I'm going to go talk to that person in the hopes that I can change his mind, perhaps not withdraw the change altogether, but perhaps mitigate it. One of the other unions – you hear that there are multiple unions in the shop. One of the other unions was successful in changing the program, and I think it stayed as it was, and this is in the transcript. Would you agree as a factual matter that the statement that triggered this response from Mr. – this is Marshman. Marshman's in front. Right. The statement that triggered this statement from Mr. Marshman included the 401 – the changes to the 401k program and some other things. There was a script, and I believe there was testimony that – The answer is yes. The answer is yes to that, yes, that there were multiple – so she did – How – I mean, this is not a particularly clear statement of I want to bargain with you about the rewards program. Absolutely. I wouldn't be here right now. Right. So, I mean, number one, it doesn't seem to be a very clear statement about intention to bargain, period. Number two, how would we say that this is a request to bargain specifically about the rewards program as opposed to the 401k, which by any common-sense measure would seem to be a lot more important than you have to wait 10 years rather than five for whatever, you know, alarm clock you're going to pick out in Canada. Right. So a couple points I'll say in response to that. The first is the – let's remember the employee services program is not part of the collective bargaining agreement versus the 401k. It wasn't then, so that's just – No, no, no, but to make the point is that the I don't know, and there's no evidence on this, whether the 401k provision in the contract permits a reservation of rights for the employer to make changes. So I don't know that the other – to say that the union – There's a lot of I don't knows here. Right. So let's – okay, let's go with this. Where's the clear statement that I want to talk about this rewards program? Sure. So you have what we all agree is an ambiguous – he's using euphemism. I'm coming to Africa. And then – so then what if we – what if you even say then that that's in response, and I don't think there's any evidence to this, but that's in response to all four bargaining changes they announced over the phone. So then you can say, sure, the employer is then in a position, I suppose, of knowing that the union invoked bargaining but not knowing them. Well, let's say that – I mean, there are two questions here. Is this really a request to bargain about anything, number one, and as to what? Let's say – we'll stipulate to number one. Sure. So first is the question. I understand. I mean, why would they think that it's about this as opposed to something else or all things as opposed to – There's the charge. It could not have been more clear in the charge. The charge related uniquely to the employee service recognition program. How late or when did this charge apply? The charge, I believe – I may be off by a day or two. I believe the charge was October 30th. Do you have a case law that says filing a charge equals a request to bargain? No. And, in fact, the case law says we completely agree. The case law says the opposite. The board precedent says the opposite. The board says that a charge doesn't take place. You don't request at all that you just file a charge that's not a request. Absolutely. So what – You're in your position here. Is it clarification? And if the request was ambiguous, then it's clarifying by the charge. Absolutely. So the board – Let's be very clear. The board here is not looking to overturn years of precedent that a charge does not take the place of a request to bargain. That is not this case. Is there a case law, like from our court perhaps, that says a charge makes clear to an employer that an otherwise ambiguous statement about whether they want to bargain or as to what Now it's clear that, okay, now we know you're unhappy about this thing. Is there a case you can tell me? Not in the Sixth Circuit. No, there is board law, and it's in the decision. But as far as I'm aware, there's not a Sixth Circuit case perhaps enforcing a board decision. Do you know, at least on this point, you're not relying on that board precedent as much as it's simply clarifying a definitive request to bargain? Right, but I believe – What about the subject matter? Right, I believe the board's decision order, and I can look more closely, I believe they have cases for the propositions that they're relying on, which is the charge clarifies. So to answer your question, I'm unaware of a Sixth Circuit case that says the same thing, but I believe the board cites the cases where they have recognized – There's a split panel on the board, right? There's a dissent. It still has the same enforcement. I know, I'm just saying – Yes, there was a dissent. There was a member of the board who dissented. Sorry, there was a member of the board who dissented. Yes. Judge Stafford. Give me the – you're right on top of it. Give me the sequence of events, this conversation between your guy, Marchman, and the union and – He's not my guy. He's the union's guy. He's not my guy. But the experienced people in the union and company side, this conversation on the telephone. Sure. Then what happens next? What happens – What's the time sequence? Right, and unfortunately, we have a really scant record. I'll go with that in terms of the timing. So we know the phone call happens, and it's around September 18th. She reads from a script, and then there's a – and he says what he says. I'm coming to Akron. She then, I think a day later, sends an email to – contemporaneous in any event. She sends an email to her supervisor because her supervisor says, Keep me posted on all of the conversations you're having with the unions because they were making many of these phone calls. Keep me posted. She sends a contemporaneous email that recounts the conversation exactly as we've all agreed. He's not happy. He's not happy, and he's serious about coming to Akron. And then about 10 days later – so still in September. I think it's September 27th. Forgive me if I'm going to be off by a day or two, but I think it's September 27th. There's the email, which is a memorialization of the script that lists the same thing that he was told over the phone. The union's view – and I think this is worth pointing out because this was litigated. Now, they lost – is the union's view was that it was a fait accompli, that by the time the phone call happened and then the email transmitted, they viewed it as something that the employer was not going to bargain. So then you have the char. But they lost that, to be fair. The ALJ disagreed and said no. There was still wiggle room on this. You could have negotiated. You invoked your right, but we're not going to say it was a fait accompli. And then on October 30th, you have the char, filed by the union, expressly alleging refusal to bargain and unilateral implementation of the employee recognition program. So I'm going to finish on the timeline. January 1, you had implementation. So there was a lot of conversation by my colleague about all the things the union didn't do. And I think it's very important to remember what the employer didn't do. The employer perhaps really didn't understand what happened on the phone call. They got a charge that clarified that. There were two months still outstanding. So I think it's important to remember that as many things as the union could have done, upon receipt of that charge, if the employer had picked up the phone and said, Marshman, I had no idea. I had no idea that you were this concerned about the program. We still have two months before implementation. Send me some dates or anything like that. Well, I guess, I mean, who has the burden for all this? I mean, the union has the burden to make a clear statement that they request to negotiate, right?  And then it's a mutual nomination on the part of the courts. So let's say that didn't happen here. Let's say it's ambiguous. Does that trigger some sort of inquiry burden on their part or not? I mean, if it's not a clear statement, but it's a working statement, but it's not a clear statement, does that itself trigger a reciprocal burden on the employer's part to sort of say, hey, you know, what are you talking about here, Marshman? No, I'm not aware that if the termination is, it was ambiguous. I'm not aware of any case law that then puts an extra step on an employer to say you needed to figure it out. But that's not what we have here. Nobody's saying, employer, you needed to dig a little deeper and figure this out. What the board says is, employer, you knew. You got a charge. And that's what we're here to review. I'm sorry? That's what we're here to review.  And as Judge Bob's pointed out, which I think is also very important to remember, the standard of review here is extraordinarily high. But we don't have an ornamental role. Absolutely. And I'm not suggesting that, Your Honor. I'm absolutely not. In the agency case. But to the extent that there are two fairly conflicting views, even if Your Honor disagrees with you, if it's fairly conflicting, the board decision stands. I would like to ask you about the question whether this program is on par with wages, hours, et cetera. Because it has to be. Sure. And, you know, just to be candid with you, I'm very skeptical that it is. And this is changing a rewards program from every five years to every ten, as I understand it. We're talking about, you know, things like alarm clocks, et cetera, maybe 100 bucks or so. I mean, the question, the statutory question here is whether this rises to the level of telling workers, we're going to reduce your pay about an hour. Something like that. And, you know, that seems like a real stretch. You can amortize this out over five or ten years. It comes down to about 40 cents a week, that monetary value. Putting out a box of donuts every two weeks would be more monetary value for most workers in this program. So it almost seems to me to trivialize the idea of wages and conditions of employment, which is like an ajustum generis catch-all that we read consistently before. I mean, why isn't this trivializing the statutory language to say, yeah, this is just like hours or wages? So my first answer to that is they want to take a step back. And that's not a challenge that the other side has offered. Because what you've just described is a de minimis sort of thing. No, they're saying, they make a clear argument that this is not hours, wages. It does not satisfy them. Right, but the way that I sort of understood your question was that it didn't constitute – it's not a wage and hour because it doesn't constitute a material change. Because once you start drilling down to figures – Well, let's forget about what they argued. I mean, that's – I'm telling you my concern. I absolutely – I agree with you. And I think what you would have seen is a different board DNR. So this is the problem when that kind of argument is raised. If they had briefed them and said this is 40 cents an hour or 40 cents a day, what would you have to say about this? The board had to decide this is on par with wages and hours. Right, but on the challenges that were before it, which was this is not a mandatory – this is to cast their argument. That it's not a mandatory subject of bargaining because it wasn't frequent enough or there wasn't the expectation or it wasn't pegged to an employment thing. Not that it's too trivial to constitute something on par with wages. I mean, I don't – I'm not interested in procedural hacking about this. I mean – I don't try to hack. Sure. All I know, and I understand your point, I will carefully look at the procedural point. Sure. But I am genuinely interested in your answer on the substance of this question. This – I mean, I said what I said. Absolutely. I mean, how is 40 cents a week, you know, on par with – And my best answer to that is the union – the union cares about this. The union speaks for the membership. The union cared about this change. Other unions cared too. Many of them didn't. One of them did. So it's not for me to pass judgment on what they determined. Does it have to be on par with hours or wages statutorily in order to be subject to this mandatory bargaining that they require? There has to be a link between the award and some employment criteria. There has to be an employment link. And here, the board finds – putting aside, again, whether it's a de minimis change – then you just have to show – not just – you have to show an employment link. So – and the considerations for that are, sure, you can look at wages or you can look at whether it's on par with productivity. Statutory – what statutory provision says they have to bargain if the union requests it? 85 and then also – 85 and then also it would be in combination with D, which imposes a mutual obligation for the parties to bargain. The connection to employment is that, at least in principle, you work five years to earn – Right, and it goes up as your work time. And, sure, it may not seem – I did the same sort of calculation. I got a little more. I got three cents an hour. But, of course, if they cut your wages three cents an hour, that's a subject – Right, and I couldn't speak to whether or not it's a bit of a thing around the shop to have the TITAC or to have the – I have no idea. But what I can say is it meant something to the union. Same principle would apply if it was a gold watch that was worth $1,000. Right, right. But, no, so what you need to have is a link between the award and the employment and an employment-related criteria. And here the board said it was longevity of service. You got it and it was predictable. You got it in five years. You won't raise – I'm sorry. That's okay. I'm way past my time, but I'm happy to – No, I'm going to say is this a recognition dinner type thing or – No, there used to be recognition dinners, but those fell off around the 80s or 90s, I think, and now it's a catalog. You get sort of – think of it as like a voucher. You get a voucher for $35 after five years of service, and you get handed a catalog with items in it that are valued. Is that subject to bargaining? That's what – I mean that's what we're here to talk about. Is that – that's an award, and is it related to employment? So putting aside whether we – putting aside the de minimis, like is it de minimis because that's not before the court. Putting that aside, has the board adequately shown – or I'm sorry, did the union adequately show and is there substantial evidence to support whether there's an employment link? And cases are very clear on that. Peters talks about this, this court and Peters, and – Where does that language employment link come from? I think that's board law, but it's endorsed by the circuit courts. And I think we have good cases in our brief that say that. So is it 29-150-AD? It's the mutual obligation to bargain. Okay, but that refers to wages, hours, or other terms and conditions of employment. Right, so this is the question, is this a term or condition of employment? Right, and that is a term, a catch-all term. Yes. That per, you know, basic rules of statutory interpretation, we remain consistent with the specific terms that they're seeking. And we're talking about wages and hours are the other specific terms. Now I know this is not a case of first impression interpreters. Sure. But I think it's important not to lose sight of the statutory question we're answering here, you know, amidst all these five-factor tests and so on. And so as a statutory matter, this has to be on the order of wages or hours. And the board, in the first instance, as you noted, this isn't a case of first impression. The board for years has been interpreting what is term and condition of employment. And that's uniquely its job to do, right? In the first instance. No, it's our job. I mean, if there is an ambiguity in a particular case, ask, you know, the board. Right, and I just need to say that the board has been developing for years case law on what does it mean to be a term and condition. We interpret the statutes, and ultimately that's what we're doing. I mean, we're applying the statute. And I guess, you know, like I said, I'm not seeing how this stuff is satisfying this statutory language. I would urge the court then to look at Peters, because this court in Peters talks about, in reviewing the board decision there, talks about the link between the award and the employment factors. Peters is a Sixth Circuit case. Right. Yeah. Okay, well, we'll be very mindful of what that case says. Unless there were any other questions. Oh, I'm sorry. I actually misspoke on Peters. I think it is Peters, too. I was going to say, I know there's another Sixth Circuit case. There's electric steam radiator. It talks about terms and conditions of employment. And that's a Christmas bonus. And then there's also Pepsi-Cola, another Sixth Circuit case. Again, it's a mandatory year end. Okay. I was getting confused in my seat, Your Honor, because the case I was going to come up and cite to you on the request of Barney was Peters. So I wish the cases would be NLRB versus Wayne Convalescent Center, which is what the citations are. Sure. It's 465 F2D 1039. And that's citing NLRB versus Barney Supercenter. And then the other case from the Sixth Circuit is Peters versus NLRB, 153 F3D 289 1998. And that's where those factors about having to communicate a clear meaning, and then the employer has to understand that meaning in the request of Barney, that's where those came from. Just to add one more thing to that argument, the ALJ, Distinguished Indian River Memorial Hospital and Armor Company. Those are the cases cited saying that this weak communication by marshalling plus a file of charge equated to a request to bargain. And the dissent specifically said, in both those cases, the parties used the words meet, discuss. It was clear. It's not somebody's travel plans like was announced in this case. So those are the two cases that were cited, and then they were distinguished. Let's talk about this gift here, because it's great. The board, and Your Honor, you pointed out that this was an issue of first impression. I didn't answer that question. If we're talking about reading the statute, I didn't want to give the board the sort of heart attack. But, Your Honor, when it comes to a tangible thank you token gift, it is an issue of first impression. There are, I did all the research, there are only three cases that I could find that dealt with tangible items where the board said that things were gifts. And that was Convale. And in Convale, the union didn't even challenge the loss of the gold watch. The union challenged the loss of the monetary bonuses. Longhorn Machine Works, that was a gold watch on a 10-year anniversary. No analysis. No analysis as to why that's a mandatory subject of bargaining. They just said it was. And then you have El Paso Disposal. All it does is cite Longhorn.  They just said it's a mandatory subject of bargaining. It's a watch. Those are the only cases that deal with tangible items like we're dealing with here. How the NLRB case law breaks out is you have food cases. And that's what I'll call them, is food cases. The hams and all that. Hams and turkeys. You have pizza parties. Ice cream socials. These are Laredo Coca-Cola Bottling Company, Gas Machinery Company, Nello. Those go in the direction of not bargaining. Those are gifts. The board basically holds that you can eat it. But, Your Honor, in these situations, they gave these food things over a period of time. And then they ceased doing it. But it appears if you can eat it, it's not a gift. Then you have on this side of the fence, Your Honor, monetary bonus cases. And where are we? We're right in the middle between these food cases and these monetary bonus cases. And I can see all day long how giving somebody a monetary bonus based on production, seniority, doing it at Christmas for 20 years and all of a sudden you stop. I can see how an employee thinks that this monetary stuff is part of my wages. It's a mandatory subject of bargaining. I can understand that. But you have this gift exception to the NLRB and we're right in the middle. We're giving people gifts. We're giving them mementos. We're giving them what the gift exception was supposed to be. So does the case law make the distinction in terms of hours or wages versus gifts? Which side of the line? The case law basically says that if the employee expects the thing to be part of their remuneration, that that's a gift. If they expect it to be part of their remuneration, it's a mandatory subject of bargaining. So that sort of expectation and remuneration. Yes. Counsel, I think your time has expired. Further, that case will be submitted. The remaining case will be submitted on briefs and the court will be adjourned. This honorable court is now adjourned.